

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America ex rel. )
)    **08CV4650**
ALEXANDRO CISNEROS, # R 26513 )    **JUDGE LEFKOW**
(Full name and prison number) )    **MAG.JUDGE VALDEZ**
(Include name under which convicted) )
)
PETITIONER )    CASE
)    NO:_____
)    (Supplied by Clerk of
)
vs. )
)    **F I L E D**
TERRY McCANN )    Aug 15. 2008
(Warden, Superintendent, or authorized )    AUG 1 5 2008
person having custody of petitioner) )
)    MICHAEL W. DOBBINS
RESPONDENT, and )    CLERK, U.S. DISTRICT COURT
)
**(Fill in the following blank only if judgment** )
**attacked imposes a sentence to commence** )
**in the future)** )
)    Case Number of State Court Conviction:
ATTORNEY GENERAL OF THE STATE OF )
)    01 CR 29168
_____ )
(State where judgment entered) )

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: CIRCUIT COURT OF COOK COUNTY, CRIMINAL DIVISION, 2650 SOUTH CALIFORNIA AVENUE, CHICAGO, ILLINOIS 60608

2. Date of judgment conviction: DECEMBER18, 2004

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

FIRST DEGREE MURDER
AGGRAVATED DISCHARGE OF A FIREARM

Revised: 7/20/05

4. Sentence(s) imposed: <u>48 YEARS</u>

5. What was your plea? (Check one)

|  |  |  |
|---|---|---|
| (A) | Not guilty | ( X ) |
| (B) | Guilty | ( ) |
| (C) | Nolo contendere | ( ) |

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

## TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    <u>Jury</u> ( X )      Judge only ( )

2. Did you testify at trial?    <u>YES</u> ( X )      NO      ( )

3. Did you appeal from the conviction or the sentence imposed? <u>YES</u> ( X ) NO ( )

(A) If you appealed, give the

(1) Name of court: <u>ILLINOIS APPELLATE COURT, FIRST DISTRICT</u>

(2) Result:    <u>CONVICTION AFFIRMED</u>

(3) Date of ruling:   <u>APRIL 15, 2005</u>

(4)  Issues raised: [1] <u>WHETHER THE EVICENCE PRESENTED AT TRIAL WAS SUFFICIENT TO PROVE THE  DEFENDANT GUILTY BEYOND REASONABLE DOUBT</u>

[2] <u>WHETHER THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHERE DEFENSE COUNSEL FAILED TO TIMELY FILE PRETRIAL NOTICE OF ALIBI DEFENSE AND ALIBI WITNESSES AND CONDUCTED WHOLLY INADEQUATE CROSS-EXAMINATION OF CRUCIAL STATE'S WITNESSES</u>

(B) If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court? <u>YES</u> ( X )      NO ( )

(A) If yes, give the

(1) Result:   <u>LEAVE TO    APPEAL TO THE ILLINOIS SUPREME COURT DENIED</u>

(2)

(3) Date of ruling:   <u>December 01, 2005, 217 Ill.2d. 517</u>

(4) Issues raised:

[1] <u>Whether the Appellate Court failed to consider significant facts in the record which taken as a whole required the Supreme</u>

2                    Revised: 7/20/05

Court of Illinois to review and reverse the Appellate Court;

[2] Whether the evidence was insufficient to sustain the conviction;

[3] Whether defendant's trial counsel was ineffective for failing to timely file an alibi; for being incapable of properly impeaching crucial testimony; for being unable to enter reputation evidence on behalf of defendant; and for being unable to even abide by the court's order to exclude witnesses.

(B) If you did not appeal, explain briefly why not:
_____

5. Did you petition the United States Supreme Court for a writ of *certiorari*?    Yes (  )    No ( X )

If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( X )    NO (  )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A. Name of court: CIRCUIT COURT OF COOK COUNTY, CRIMINAL DIVISION

B. Date of filing: April 16, 2006

C. Issues raised:

[1] WHETHER THE TRIAL COURT ERRONEOUSLY DENIED ME MY SIXTH AND FOURTEENTH AMENDMENTS RIGHTS TO COMPULSORY PROCESS AND TO DUE PROCESS OF LAW BY DENYING ME THE RIGHT TO CALL AN ALIBI WITNESS TO TESTIFY ON MY BEHALF AT MY TRIAL;

[2] WHETHER MY TRIAL COUNSEL RENDERED INEFFECTIVE REPRESENTATION AS GUARANTEED TO ME BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION BY FAILURE TO FILE A TIMELY NOTICE OF ALIBI AS REQUIRED BY THE RULES OF THE ILLINOIS SUPREME COURT;

Revised: 7/20/05

[3] WHETHER THE TRIAL COURT DENIED MY FIFTH, SIXTH AND FOURTEENTH AMENDMENT GUARANTEES BY REFUSING TO PERMIT ME TO TESTIFY TO MY WHEREABOUTS AT THE TIME OF THE ALLEGED OFFENSE;

[4] WHETHER MY APPELLATE COUNSEL RENDERED INEFFECTIVE REPRESENTATION ON DIRECT APPEAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS BY FAILING TO RAISE ON APPEAL THE PROPRIETY OF THE TRIAL COURT'S REFUSAL TO PERMIT ME TO TESTIFY ON MY OWN BEHALF.

D. Did you receive an evidentiary hearing on your petition? YES ( ) NO ( X )

E. What was the court's ruling?  POST CONVICTION PETITION DENIED

F. Date of court's ruling:  July 06, 2006

G. Did you appeal from the ruling on your petition? YES ( X )
   NO  ( )

H. (a) If yes, (1) what was the result?  DENIAL OF POST CONVICTION PETITION AFFIRMED

       (2) date of decision:  DECEMBER 06, 2007

   (b) If no, explain briefly why not:


I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( X ) NO ( )

   (a) If yes, (1) what was the result?  PETITION FOR LEAVE TO APPEAL DENIED

   (2) date of decision:  MAY 29, 2008
   (b)
   (c) If no, explain briefly why not:

2. With respect to this conviction or sentence, have you filed a petition in a state court using any other form of post-conviction procedure, such as coram nobis or habeas corpus? YES ( ) NO ( X )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

   1. Nature of proceeding  _____

4

Revised: 7/20/05

2. Date petition filed        _____

3. Ruling on the petition      _____

4. Date of ruling            _____

5. If you appealed, what was
   the ruling on appeal?       _____

6. Date of ruling on appeal    _____

7. If there was a further appeal,
   what was the ruling ?        _____

8. Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( ) <u>No( X)</u>

A. If yes, give name of court, case title and case number:

   B. Did the court rule on your petition?  If so, state

   (1)  Ruling:

   (2) Date:        _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition YES ( )   <u>NO ( X )</u>

If yes, explain:

Revised: 7/20/05

## PART III -- PETITIONER'S CLAIMS

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one
  Supporting facts (tell your story <u>briefly</u> without citing cases or law):

  I was indicted by the grand jury of Cook County, Illinois, 01 CR 29168, for the crimes of First Degree Murder and Aggravated Discharge of a Firearm, allegedly committed on November 01, 2001. I was represented by two private counsels, Michael Faye and Peter Hickey. Many months prior to trial, I informed my trial counsel that at the time of the alleged homicide, November 01, 2001, at about 1:00-2:00 a.m., I was at my home located many miles from the scene of the homicide, and that my mother, Mrs. Josephine Cisneros, would verify this. My mother also told my attorneys in my presence that at the time of the homicide I was at home with her, and she agreed to testify on my behalf at my trial. Nevertheless, my attorneys did not file a written "notice of alibi" as required by the Rules of the Supreme Court of Illinois, Rule 413(d). On September 18, 2003, one day after my trial commenced but prior to the prosecution resting its case my attorneys attempted to file a proper "Notice of Alibi Defense" as required by Rule 413(d). The prosecution did not object to the alibi defense nor the testimony of my alibi witness. Nevertheless, the trial judge, Honorable Diane Cannon, a judge of the Circuit Court of Cook County, Illinois <u>sui</u> <u>sponte</u>, and without hearing the defendant's offer of proof as to the testimony of Mrs. Cisneros, barred my alibi witness from testifying at my trial. The failure of my trial counsel to file a timely compliance with the above Illinois Supreme Court Rule deprived me of effective representation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. This ineffective representation coupled with the <u>sui</u> <u>sponte</u> ruling by the trial judge deprived me of my United States Constitutional rights to compulsory process as guaranteed to me by the Sixth Amendment, and to due process of law as guaranteed by the Fourteenth Amendment. I was convicted by a jury of First Degree Murder and Aggravated Discharge of a Firearm, and on September 28, 2003, I was sentenced to a term of 48 years in the Illinois Department of corrections.

  On appeal to the Illinois Appellate Court, First District, I

Revised: 7/20/05

secured new counsels on appeal, Weinberg and Rizzi, 53 West Jackson Blvd., Suite 1460, Chicago, Illinois, 60604. In my brief to the Appellate Court, I urged the Appellate Court that my trial counsels had rendered ineffective representation to me by their failure to file a timely discovery answer asserting the alibi defense and a list of alibi witnesses. In an unpublished Order dated April 15, 2005, # 1-04-0333, [16 pages] my conviction was affirmed. The Appellate Court ruled that I was not prejudiced by the inactions of my trial attorneys, and the preclusion of my alibi witness, because I had "failed to demonstrate how [my] mother's testimony that [I] was at home with her at the time of the murder would have changed the outcome of [my] case." [pp.15]    The Appellate Court ruling as quoted above further denied me my Fourteenth Amendment right to due process of law by its misapplication of the harmless error doctrine.

Thereafter, I filed a timely Petition for Leave To Appeal with the Illinois Supreme Court, # 101051, claiming that my trial counsels "failed to properly assert the alibi defense in a timely manner thus depriving [me] of an affirmative defense. [pp.13]    This Petition for Leave to Appeal was denied by the Illinois Supreme Court on December 01, 2005. 217 Ill.2d. 575. No petition for certiorari was filed with the Supreme Court of the United States.

On April 28, 2006, I filed a timely petition for post-conviction relief pursuant to the Illinois Statutes, 725 ILCS 5/122-1.    Over my objection and motion for substitution of judges, the cause was assigned to the original trial judge, the Honorable Diane Cannon.

Again without hearing argument, nor receiving any response from the prosecution, Judge Cannon on July 06, 2006, denied by written order [11 pages] the petition for post-conviction relief. On the issue of the trial judge sui sponte ruling without objection by the prosecution that the defendant's alibi witness would be precluded from testifying at my trial, Judge Cannon ruled, "The State would have been severely prejudiced if it were forced to proceed against the alibi defendant without having an equal opportunity to prepare rebuttal witnesses." [pp.4]    Judge Cannon further ruled that the failure to permit defense counsel's tardy notice of alibi "was a surprise tactic geared toward giving the defendant an unfair advantage" [pp.5] is completely unsupported by anything in the trial record.

On appeal from the denial of my petition for post-conviction relief, the Appellate Court of Illinois, First District, on December 06, 2007, affirmed Judge Cannon's Order in an unpublished Order, # 1-06-2380. [7 pages] The Appellate Court ruled that Judge Cannon did not erroneously deny the defendant's motion for a substitution of judges on the post-conviction petition. [pp. 4]    The Appellate Court also rejected my contentions regarding the exclusion of my alibi witness on the ground that my counsel raised the alibi issue "after the State had rested its case", [pp. 7] a statement which the trial record specifically refutes. In addition, the Appellate Court rejected my alibi-preclusion contentions on the ground that "I could not prove prejudice from those

Revised: 7/20/05

rulings, sui sponte or otherwise." [pp.5]

My timely petition for rehearing was denied by the Appellate Court on December 06, 2007 [unpublished order]   I filed a timely petition for Leave to Appeal with the Illinois Supreme Court, # 106149, raising several grounds including the following: "THE TRIAL COURT DENIED THE DEFENDANT DUE PROCESS OF LAW AND HIS RIGHT TO COMPULSORY PROCESS WHEN THE COURT ACTING ON HER OWN DENIED THE DEFENDANT THE RIGHT TO CALL HIS ALIBI WITNESS." On May 29, 2008, the Illinois Supreme Court denied my Petition for Leave to Appeal. ___Ill.2d.___ .

I respectfully urge this court that my constitutional guarantees to effective counsel and to compulsory process under the Sixth Amendment, and to the due process of law guaranteed by the Fourteenth Amendment have been denied to me by the courts of the State of Illinois.

(B) Ground two
Supporting facts:

I was tried by jury in the Circuit Court of Cook County, Illinois, Criminal Division, convicted of First Degree Murder and Aggravated Discharge of a Firearm, and sentenced to 48 years in the Illinois Department of Corrections, as related in the foregoing statement [Ground One] which I adopt in full herein. During my trial, as noted, I sought to call an alibi witness which the trial judge sua sponte and without objection by the prosecution precluded from testifying. I testified before the jury and denied committing the offenses. When I sought to testify that I was at home at the time of the alleged offenses the trial judge sustained a prosecution objection (no grounds cited) to my own testimony, and struck my testimony from the record giving no reason for the ruling. When my counsel sought to be heard on the ruling and to make an offer of proof the judge refused to entertain the objection and proffer.

On appeal to the Illinois Appellate Court, First District which court affirmed my conviction, # 1-04-0333, my counsel on appeal did not make the argument that I had been wrongfully denied my right to testify. Nor was this issue raised on my timely direct Leave to Appeal Petition to the Illinois Supreme Court, # 101051, which was denied December 01, 2005. I then filed a timely petition for post-conviction relief raising as one of the grounds for relief the refusal of the trial court to permit me to testify before the jury as to my whereabouts at the time of the alleged offenses, and alleging that my appellate counsel had rendered ineffective assistance by failing to raise on appeal the preclusion of my own testimony at my trial as delineated herein. Supportive of this petition and argument I filed affidavits from myself and my trial counsel. I was denied a substitution of judges on the post-conviction petition, and the trial judge, Honorable Diane Cannon,

Revised: 7/20/05

on July 06, 2006, denied my post-conviction petition without ruling on the allegation that I had been denied the right to testify on my own behalf as to my whereabouts at the time of the homicide. Judge Cannon, neither in her written order denying the post-conviction petition, nor orally, addressed this issue.

I appealed the denial of my post-conviction petition to the Illinois Appellate Court, First District, # 1-06-2380, raising the issue of the denial of my right to testify on my own behalf, and Judge Cannon's failure to rule on the issue together with the issue of the ineffectiveness of my failure of my appellate counsel on my direct appeal to address the preclusion of my own testimony. On December 06, 2007, the Illinois Appellate Court First District affirmed Judge Cannon's order denying my post-conviction petition. In its order, the Illinois Appellate Court did not rule on my argument that I had been denied the right to testify on my own behalf, the incompetence of my appellate counsel to raise this issue on direct appeal, and the refusal of Judge Cannon to address those issues. I then timely petitioned the Illinois Appellate Court on Rehearing specifically requesting a ruling on these issues, but on February 13, 2008, the Petition for Rehearing was denied without further comment or ruling. I next filed a timely Petition for Leave to Appeal to the Illinois Supreme Court, # 106149, raising these same issues. The Illinois Supreme Court on May 29, 2008, denied my Petition for Leave to Appeal.

I respectfully urge this honorable court that the trial judge, the Illinois Appellate Court, First District, and the Illinois have all denied me my United States Constitutional guarantees to testify on my own behalf, to compulsory process, to competent counsel, and to due process of law as guaranteed, respectively, by the Fifth Amendment, the Sixth Amendment and the Fourteenth Amendments thereto.

Revised: 7/20/05

(C) Ground three
Supporting facts:

_____

(D) Ground four
Supporting facts:

_____

2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?
YES ( X )    NO (  )

3. If you answered "NO" to question (2), state <u>briefly</u> what grounds were not so presented and why not:
_____

**PART IV - REPRESENTATION**

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing: MICHAEL FAYE, 2536 SOUTH CALIFORNIA AVENUE, CHICAGO, ILLINOIS

(B) At arraignment and plea: MICHAEL FAYE _2536 SOUTH CALIFORNIA AVENUE CHICAGO, ILLINOIS

(C) At trial: MICHAEL FAYE AND PETER HICKEY, 2536 SOUTH CALIFORNIA AVENUE, CHICAGO, ILLINOIS

(D) At sentencing: MICHAEL FAYE AND PETER HICKEY 2536 SOUTH CALIFORNIA AVENUE, CHICAGO, ILLINOIS  AVENUE

(E) On appeal: WINEBURG AND RIZZI, 53 WEST JACKSON BLVD., CHICAGO, ILLINOIS 60604

(F) In any post-conviction proceeding:

SAM ADAM, 53 WEST JACKSON BLVD., CHICAGO, ILLINOIS 60604

10

(G) Other (state):

## PART V - FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )  <u>NO( X )</u>

Name and location of the court which imposed the sentence:

Date and length of sentence to be served in the future

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _July 23, 2008_
(Date)

_Sam Adam_
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

(Signature of petitioner)

R 26513
(I.D. Number)

STATEVILLE CORRECTION CENTER, JOLIET, ILLINOIS
(Address)

Revised: 7/20/05

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIFTH DIVISION
APRIL 15, 2005
570

No. 1-04-0333

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 29168 |
| | ) | |
| ALEJANDRO CISNEROS, | ) | Honorable |
| | ) | Diane Gordon Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a jury trial, defendant Alejandro Cisneros was
convicted of first degree murder and sentenced to 48 years in
prison. On appeal, defendant contends the evidence was
insufficient to prove him guilty beyond a reasonable doubt of
first degree murder because the State's witnesses testified
inconsistently. Defendant also contends that his trial counsels
were ineffective because they failed to timely file a pretrial
notice of an alibi defense and adequately cross-examine the
State's witnesses. We affirm.

At trial, Maria Nunez testified that she was married to the
victim, Ivan Nunez. On October 31, 2001, at about 10 p.m., Maria
and the victim went to the Rendezvous bar located at 3500 West
47th Street in Chicago. Around 2 a.m., Maria began to say goodbye
to people in the bar as the victim was "just crossing the

threshold, the door." Maria stated that she did not actually see
the victim leave the bar. Maria also testified that she did not
exactly see the victim crossing the threshold but knew he was
crossing the threshold. "No more than one minute" after the
victim was crossing the threshold, Maria heard "three" or
"multiple" gunshots from outside the bar's front door. After
hearing the gunshots, she immediately turned towards the door and
saw the victim "from the door [come] jumping towards [her] and he
was saying they shot me.' The victim then "crumbled" to the
ground. He later died at the hospital.

        Cesar Sanchez testified that he was a disk jockey at the
Rendezvous bar. Sanchez was working at the time in question and
knew the victim and Maria. When Sanchez exited the bar at 1:50
a.m., he saw defendant standing on the stoop just outside the
bar's front door. Defendant wanted to go inside the bar, but
Sanchez told him it was closed. Defendant then asked Sanchez if a
person with long hair was inside. Sanchez asked defendant if the
person had a cap and long hair. Defendant replied no and said,
"the person with the lady with the curly hair." Sanchez then
realized that defendant was talking about the victim. Sanchez
indicated that he answered defendant's question as to whether the
victim was inside the bar. Sanchez testified that he then asked
defendant for a cigarette. While Sanchez was smoking, he saw
defendant approach a truck parked a couple of feet away from the
stoop. Sanchez saw defendant talk to someone inside the truck.
Sanchez then began to walk home.

                              - 2 -

Sanchez testified that when he was across the street from the bar, he heard the bar's door open and some voices, which he did not recognize. Sanchez then heard some gunshots coming from the direction of the bar, which was behind him at the time. Sanchez looked back towards the bar and saw defendant jump from the bar's front stoop to the truck. Defendant tried to open the truck's door but could not. Defendant then went through the truck's window. The truck sped off with defendant's legs dangling out the window. Sanchez then entered the bar where he saw the victim lying on the ground in the middle of the bar. Sanchez testified that he later identified defendant in a lineup. Sanchez stated that he subsequently informed an officer who interviewed him that he "was sure [the person he had identified] was the same person" he had asked for the cigarette.

Rudolfo Cruz testified that he worked as a security guard at the Rendezvous. On the night in question, at about 1:40 a.m., Cruz saw defendant inside the bar "walking towards the door. As he walked towards the door he stumbled, he stops, he looks and *** sees [the victim], and then he walks out." At about 2 a.m., the bar closed and Cruz started to have everyone leave. The victim was waiting for his wife to leave, but then decided to get his car. Cruz walked the victim towards his car and then came back inside. A few minutes later, Cruz heard one or two gunshots outside the bar and the victim entered the bar. A couple of minutes later Cruz saw the following:

> "[Defendant] opened up the door *** with his
> left hand, pointed the gun in with the right,

- 3 -

and at that point when he opened the door [the
victim] was actually three feet away from the
door, and that's when we heard the three shots
ring out. At that point [the victim] runs
towards the bar yelling help, help, I'm shot."
Cruz testified that the victim was about 3 feet away from
defendant and 1½ feet away from the gun while inside the bar.
Defendant's counsel then informed Cruz that when he was before the
grand jury he testified that defendant was "about a foot away"
from the victim. Cruz indicated that his recollection of the
events were clearer when he testified before the grand jury, but
he remembered everything that happened.

Cruz further testified that he was about 30 feet away from
the door during the shooting. Cruz stated that people have to
enter the bar sideways because the "door is heavy and it moves you
forward." The door "will open up far enough where you can walk
straight in, but the door is heavy so it doesn't open up all the
way like that. You have to push it open." Cruz later identified
defendant as the shooter in a lineup.

Cruz further testified that defendant frequented Rendezvous
"once or twice a month." Two months prior to the fatal shooting,
defendant had bothered the victim's wife, and Cruz told him to
leave the bar. Defendant and Cruz then had a fist fight, and
defendant was banned from the bar for a couple of weeks.

Lilliana Pena testified that she was a waitress at the
Rendezvous and was working at the time in question. Pena stated

- 4 -

that she heard gunshots outside the bar and when she turned, she saw the victim coming inside the bar.

Lourdis Gonzalez testified that at the time of the incident she was working as a waitress at the bar. Gonzalez was behind the bar counter when the shooting started. Gonzalez stated that she first heard one or two gunshots. Gonzalez then turned around and saw the victim come inside the bar. The victim said, "I got hit." Gonzalez testified that she:

> "turned around going back to the waitress
> station to see *** who it was because [we] all
> [] heard *** I was like well, who is it. So I
> just turned around and called 911. And then
> there were more shots. So what I did was call
> 911 and duck down."

Gonzalez stated that all the gunshots she heard were fired from outside the bar's front door. Gonzalez did not see who fired the gunshots and stated that the person who fired the gun stayed outside the bar.

Officer Arthur Oswald testified that he investigated the scene of the incident. The officer found two cartridge cases, one in the bar's doorway and one on the sidewalk just outside the bar's front door. A fired bullet was recovered along the bar counter. The officer stated that it is quite common not to recover all the fired bullets.

Officer Edward Isadore testified regarding the layout of the bar. He stated that as you enter the bar, there are tables and then the bar is straight ahead. The bar runs along the back wall.

- 5 -

01/30/2006  18:06    3129393654

1-04-0333

Doctor Edmond Donoghue testified that he reviewed the autopsy
reports for the victim.  The doctor stated that the victim's fatal
gunshot wounds "revealed no evidence of close range firing."  The
doctor then explained the definition of close range firing:

> "if we say a wound is a close range wound, we
> mean it's probably under 18 inches.  If we say
> there is no evidence of close range firing, it
> could be anywhere from 18 inches to
> theoretically a mile away."

Following these witnesses' testimony, defendant's counsels
informed the court for the first time that they had an alibi
defense.  The court stated that it would not allow a "trial by
ambush."  The court denied defendant's request to present an alibi
defense.

Thereafter, Jose Morales testified that he had known
defendant for five or six years.  Morales stated that on the night
in question at about 10:15 p.m., defendant picked him up at his
house.  They drove around for a while and then, around 11 p.m.,
they went to Rendezvous.  Defendant and Morales drank a little bit
at the bar and left around 1 a.m.  Defendant dropped Morales off
at home at about 1:15 a.m.  Morales does not know where defendant
was after 1:15 a.m.

Defendant testified that in the early morning hours of
November 1, 2001, he did not have a gun with him and did not shoot
anyone.  Defendant stated that after he dropped off Morales he
went straight home.

At the close of the evidence, the jury found defendant guilty of first degree murder and aggravated discharge of a firearm. Defendant filed a motion for a new trial, alleging, in relevant part, that the State failed to prove him guilty beyond a reasonable doubt because Cruz's testimony was impeached and improbable. Defendant also alleged he was denied due process when the court "withdrew Defendant's affirmative defense of alibi." At the hearing on the motion, one of defendant's counsels asserted that until two days before the trial, he was unable to locate Morales, who was with defendant on the night in question, and once he located Morales, he realized that there was "a little time problem," which is why he presented an alibi defense. Defendant's attorneys alleged that the alibi defense was that defendant's "mother was going to testify as to what time [defendant] got home." The court responded that it would not allow the alibi defense after opening statements and after the witnesses testified, especially where the alibi was defendant's mother. The court noted that this was not a witness who had "just appeared." The court then stated that:

> "The witnesses testified clearly and credibly
> to their observations, each one of them being
> at a different location in this bar when the
> shooting occurred. [] they were unimpeached.
> *** The evidence was overwhelming albeit eye-
> witness along with circumstantial evidence."

The court denied the motion and sentenced defendant to 48 years in prison for first degree murder.

On appeal, defendant first contends that the State failed to prove him guilty of first degree murder because the State's witnesses testified inconsistently and Cruz's testimony grossly contradicted Doctor Donoghue's testimony.

When a defendant challenges the sufficiency of the evidence, the proper standard of review is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Williams, 193 Ill. 2d 306, 338 (2000). The court of review is not in a position to observe the witnesses as they testify, and questions of credibility are left largely within the trier of fact's discretion. People v. Harris, 297 Ill. App. 3d 1073, 1083 (1998).

Defendant contends that Cruz's testimony contradicted the testimony of Maria, Gonzalez and Pena in that he testified that the shooting occurred inside the bar while the three other witnesses testified that the victim "came into the bar after they heard gunshots outside the bar." To support his contention that he should not have been found guilty, defendant cites People v. Hister, 60 Ill. 2d 567 1975), People v. Jakes, 207 Ill. App. 3d 762 (1990), and People v. McCarthy, 102 Ill. App. 3d 519, 524 (1981).

In Hister, the defendant was convicted of murder. At trial, several identification witnesses contradicted each other and themselves about having seen the defendant in the area of the murder. The inconsistencies in the witnesses' testimony included the description of the offenders, the clothes worn by the

- 8 -

offenders, the number of offenders, the type of vehicle driven by
the offenders, who was armed, the type of weapon used, and the
sequence and location of the events in question.  The witnesses
provided completely different scenarios as to how, where, and the
circumstances under which the homicide occurred.  People v.
Carvajal, 241 Ill. App. 3d 886, 895 (1993), citing Hister, 60 Ill.
2d 567.  The supreme court held that the witnesses' testimony left
it in a state of uncertainty as to the events surrounding the
shooting, and therefore, the evidence was insufficient to support
the defendant's conviction.  Hister, 60 Ill. 2d at 573.

In Jake, the defendant was convicted of aggravated battery.
The victim informed the police that he was attacked by unknown
assailants but then testified at trial that he had known one
assailant for a year and the other for almost five years.  The
victim also provided various versions of the incident which were
completely different.  In addition, the victim's testimony was
inconsistent with the witness' testimony.  This court reversed the
defendant's conviction, holding that the inconsistencies in the
victim's various versions of the incident when viewed together
with the witness' testimony created a reasonable doubt.  Jakes,
207 Ill. App. 3d at 771-72.

In McCarthy, the defendant was convicted of aggravated
battery.  At trial, the State called the victim and seven
occurrence witnesses who were in the victim's car at the time of
the incident.  Five of the witnesses lived with and were related
to the victim.  Since the incident, the victim had filed a
personal injury lawsuit against the defendant.  Each occurrence

- 9 -

witness, including the victim, told different stories regarding
the incident, most of which significantly differed from earlier
versions that they had given to the police.  Some of the details,
however, were identical.  Several of the witnesses admitted
discussing their testimony prior to trial.  This court reversed
the defendant's conviction, finding the evidence was insufficient
based on the numerous biases, inconsistencies, and suspicious
consistencies.  McCarthy, 102 Ill. App. 3d at 524.

In Hister, Jakes and McCarthy, the witnesses contradicted
their own testimony and testified inconsistently with each other.
In those cases, the facts surrounding the incidents in question
were completely different depending on which witnesses' testimony
was relied upon.  We find the present case more akin to People v.
Draper, 79 Ill. App. 3d 749 (1979).

In Draper, the defendant was convicted of murder.  On appeal,
the defendant argued that the evidence was insufficient to support
the guilty finding based on the witnesses' inconsistent testimony
describing the shooting.  The evidence revealed that Ware,
Mathews, Davis and Eady witnessed the murder.  Ware testified that
the decedent was on the ground when shot.  Mathews stated that the
decedent was holding the defendant when he was shot and then fell
down.  Eady stated that the victim fell to the ground and was then
shot twice.  Davis testified that the decedent was on the ground
when he was shot once or twice.  Mathews stated that the decedent
was face down on the ground when shot, Eady stated the victim was
on his left side with his right leg raised, and Davis had the
victim on his back at that time.  This court noted that the only

- 10 -

inconsistency in the witnesses' testimony was the precise position of the decedent's struggling body as he was observed "from the point of vision of each witness as he was being shot, which is of minor character when compared" to the defendant's uncorroborated defense that the victim and he were standing when the gun was accidently fired. Draper, 79 Ill. App. 3d at 754. This court held that the minor inconsistencies were an insufficient basis upon which to set aside a guilty finding, where the finding was supported by the totality of the evidence beyond a reasonable doubt. Draper, 79 Ill App. 3d at 754.

Here, as in Draper, the minor discrepancy in the testimony describing the shooting, as seen from the witnesses' different vantage points, is not a sufficient basis upon which to set aside the guilty finding. Cruz, Maria, Gonzalez and Pena all testified that they heard some gunshots outside Rendezvous at about 2 a.m. Both Cruz and Gonzalez testified that after hearing one or two gunshots outside the bar, they then saw the victim enter the bar. Gonzalez was behind the bar counter and Cruz was 30 feet away from the door when the victim entered. Cruz further testified that a couple of minutes later he saw defendant open the door with his left hand and point the gun inside the bar with an extended right arm. Cruz then heard three more gunshots as the victim was standing about 3 feet away from the door and 1½ feet away from defendant's gun. Cruz did not testify that he saw defendant walk inside the bar. Cruz also noted that the front door was heavy and did not open all the way unless it was pushed.

- 11 -

Gonzalez testified that after she heard one or two gunshots and saw the victim enter the bar, she looked to see "who it was." She then "turned around and called 911. And then there were more shots" outside. Gonzalez did not see defendant. However, after the victim walked inside, Gonzalez was busy calling 911 and was not looking at the door when she heard more gunshots.

Maria and Pena were also not looking in the direction of the door when they heard the gunshots. Maria testified that after she heard multiple gunshots outside the bar, she turned around and saw the victim in the doorway jumping towards her. Pena testified that she only heard gunshots outside the bar and when she turned, she saw the victim coming inside the bar. Pena, Maria and Gonzalez were not facing the door when they heard the gunshots. Cruz, however, was facing the front door when he heard the gunshots inside the bar  Cruz knew some gunshots were fired inside the bar because he heard the gunshots as he saw defendant holding the door open with his left arm while pointing the gun through the doorway at the victim, who was about a foot and a half away from the gun.  The witnesses' different vantage points resulted in them either hearing the gunshots inside or outside Rendezvous and either seeing or not seeing defendant extending his hand with the gun through the doorway and pointing it at the victim.  Furthermore, when Pena, Maria and Gonzalez turned and looked in the direction of the door after they heard the gunshots, they all placed the victim either inside the bar or coming in through the doorway.  The minor inconsistencies as to the victim's exact location in the doorway and whether the gunshots were inside

- 12 -

or outside the bar are insufficient to disturb the jury's finding. See Draper, 79 Ill. App. 3d at 754 (minor inconsistencies as to the location of the victim's struggling body at the time of the shooting did not require a reversal); See also People v. Scott, 318 Ill. App. 3d 46, 53 (2000) (it is the responsibility of the trier of fact to resolve contradictory evidence and factual disputes and to weigh the credibility of the witnesses); People v. Hernandez, 278 Ill. App. 3d 545, 551 (1996) (questions of credibility must be left largely in the discretion of the trier of fact).

Furthermore, Cruz's testimony was supported by the fact that a fired bullet was found inside the bar. Moreover, Cruz's testimony was buttressed by Sanchez's testimony. Sanchez testified that defendant was looking for the victim. When Sanchez was walking home at about 2 a.m., he heard the bar's door open and then some gunshots coming from the direction of the bar. When he turned, he saw defendant jump from the stoop outside the bar's front door to the truck parked a couple of feet away from the stoop. Defendant was unable to open the truck's door and jumped through the truck's window. The truck sped off with defendant's legs still dangling outside the window. Defendant contends that Sanchez's testimony was unreliable because he was unsure of his identification of defendant in the lineup. However, Sanchez testified that he told an officer that he "was sure" defendant was the same man who had given him a cigarette. Clearly, contrary to defendant's contention, defendant was at the bar at the time in question.

- 13 -

Defendant also asserts that Cruz's grand jury testimony that the victim was about a foot away from defendant during the shooting was inconsistent with the doctor's testimony that the victim's gunshot wounds did not reveal any evidence of close range firing. The doctor testified that close range firing is "under 18 inches" and "no evidence of close range firing, [] could be anywhere from 18 inches to theoretically a mile away." However, Cruz testified at the trial that the victim was about 3 feet away from defendant and 1½ feet away from the gun. Cruz's trial testimony was consistent with the doctor's testimony because 1½ feet is 18 inches, and the doctor stated that 18 inches is not close range firing. The trier of fact clearly resolved the contradictory evidence in favor of the trial testimony, and we will not disturb that finding.

Defendant essentially attempts to elevate minor discrepancies to the status of reasonable doubt and to obfuscate the obvious evidentiary consistencies which establish defendant's guilt beyond a reasonable doubt. Overwhelming evidence demonstrated that a rational trier of fact could find that defendant fatally shot the victim as he stood at or near the bar door. To expect pinpoint consistency among several occurrence witnesses ignores the reality of a shooting incident, the differing vantage points of the witnesses, the early morning hour when the bar was closing, and an eyewitness' unequivocal identification of defendant as the shooter.

Notably, defendant also challenges his conviction for aggravated discharge of a firearm. Defendant was not sentenced

for this offense. There is no final judgment until a sentence is imposed and, in the absence of a final judgment, we cannot entertain an appeal. People v. Johnson, 318 Ill. App. 3d 281, 291 (2000). Therefore, there can be no appeal of defendant's conviction for aggravated discharge of a firearm.

Next, defendant contends that his trial counsels were ineffective for failing to present a timely alibi defense and adequately cross-examine the witnesses.

To effectively demonstrate an ineffective assistance of counsel claim, the defendant must establish that the attorney's performance fell below an objective standard of reasonableness and but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). There is a strong presumption that trial counsel's challenged action or inaction was the product of trial strategy and not incompetence. People v. Barrow, 133 Ill. 2d 226, 247 (1989). An ineffectiveness claim may be disposed of based on lack of prejudice alone. People v. Penrod, 316 Ill. App. 3d 713, 723 (2000).

Defendant contends his counsels were ineffective for failing to timely present his mother as an alibi witness. Defendant has failed to demonstrate how his mother's testimony that he was at home with her at the time of murder would have changed the outcome of his case. The evidence against defendant was overwhelming. At about 2 a.m., Cruz saw defendant fire a gun at the victim. Sanchez testified that after he heard the gunshots around 2 a.m., he saw defendant jump off the stoop in front of the Rendezvous bar

- 15 -

to a truck.  Defendant entered the truck through the window, and the truck sped off with defendant's legs dangling out the window. These two witnesses both placed defendant at the scene of the crime.  Defendant cannot demonstrate prejudice.

Finally, the record refutes defendant's claims to the extent defendant relies on matters inside the record in arguing that his trial counsels were ineffective for failing to adequately cross-examine the State's witnesses.  The record establishes that defendant's trial counsels thoroughly cross-examined the State's witnesses.  Trial counsels' decision on how to cross-examine the State's witnesses or whether to pursue a certain line of questioning was a matter of trial strategy and does not support a claim of ineffective assistance.  See People v. Campbell, 332 Ill. App. 3d 721, 730 (2002); People v. McKinney, 260 Ill. App. 3d 539, 546 (1994).

For all the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

CAMPBELL, P.J., with O'BRIEN and NEVILLE, JJ., concurring.

**STATE OF ILLINOIS**
**SUPREME COURT**

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the fourteenth day of November, 2005.

Present: Robert R. Thomas, Chief Justice
Justice Charles E. Freeman          Justice Mary Ann G. McMorrow
Justice Thomas R. Fitzgerald        Justice Thomas L. Kilbride
Justice Rita B. Garman              Justice Lloyd A. Karmeier

---

On the first day of December, 2005, the Supreme Court entered the following judgment:

No. 101051

People State of Illinois,

    Respondent

    v.

Alejandro Cisneros,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
First District
1-04-0333
01CR29168


The Court having considered the Petition for leave to appeal and being full advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto
subscribed my name and affixed the Seal
of said Court, this twenty-third day
of December, 2005.

*Juleann Hornyak*

                Clerk,
Supreme Court of the State of Illinois

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Post-Conviction Proceeding |
| | ) | |
| | ) | |
| vs. | ) | 01 CR 29618 |
| | ) | |
| ALEJANDRO CISNEROS, | ) | Hon. Diane Gordon Cannon, |
| | ) | Judge Presiding. |
| Defendant-Petitioner. | ) | |

## <u>ORDER</u>

Petitioner, Alejandro Cisneros, seeks post-conviction relief from convictions entered against him on September 28, 2003. That day a jury convicted him of one count of first degree murder and one count of aggravated discharge of a firearm. On December 18, 2003 the Court sentenced petitioner to forty-eight years for first degree murder and placed petitioner under the control of the Illinois Department of Corrections. As grounds for post-conviction relief, petitioner claims the trial court improperly barred petitioner and Josephine Cisneros, petitioner's mother, from testifying in support of his alibi defense and did not allow his trial counsel an opportunity to interview a State witness; Further, petitioner claims trial counsel was ineffective for failing to file a timely notice of alibi defense discovery answer prompting the Court to preclude testimony from defense witnesses and failing to make an offer of proof; and 3) appellate counsel provided ineffective assistance when counsel failed to raise on appeal various alleged errors.

1

## BACKGROUND

Petitioner's conviction stems from the shooting death of Ivan Nunez that occurred on November 1, 2002. The facts surrounding petitioner's conviction are set forth in detail in the Mandate issued by the Appellate Court. Therefore, only those facts necessary for the resolution of this cause will be presented.

On November 5, 2001 petitioner was arrested and charged with first degree murder in violation of 720 ILCS 5/9-1 (West 2001). On November 7, 2001 Attorney Michael Fay filed an appearance as defendant's attorney. Attorney Fay filed an Answer to Discovery on behalf of petitioner on September 16, 2003, one day before trial was to begin. On September 17, 2003 petitioner filed a Supplemental Answer to Discovery in which for the first time, petitioner indicated that they would assert an affirmative defense of alibi. Petitioner named Mrs. Cisneros, his mother, as a defense witness who would assert that petitioner was not present at the Rendezvous Lounge at 3500 W. 47th Street, Chicago, at 1:30 a.m. on November 1, 2001, but instead was home.

The People did not formally object to petitioner's late answer to discovery. Nonetheless, the Court barred and precluded the defendant's mother from testifying because of the lateness in responding to discovery. The Court further denied petitioner's counsel the opportunity to make an offer of proof as sanction for the 11th-hour tactic of presenting an alibi defense on **the day of trial** and after opening statements and the presentation of the State's witnesses.

Prior to petitioner's trial, the State listed as one of its witnesses, Dr. Edmond Donoghue, Chief Medical Examiner of Cook County.

2

## PROCEDURAL HISTORY

As indicated above, a direct appeal was taken to the Illinois Appellate Court, First Judicial District. On appeal, defendant contended that the evidence was insufficient to prove him guilty beyond a reasonable doubt of first degree murder because the State's witnesses testified inconsistently. Further, defendant argued that his trial counsels were ineffective because they failed to timely file a pretrial notice of an alibi defense and adequately cross-examine the State's witnesses. The Appellate Court affirmed the decision of the trial court and issued a 16-page opinion clarifying its specific findings on April 15, 2005. *People v. Alejandro Cisneros*, No. 1-04-0333 (2005) (unpublished order pursuant to Supreme Court Rule 23).

Petitioner sought leave to appeal to the Illinois Supreme Court. However, his petition was denied on December 1, 2005. *People v. Alejandro Cisneros*, 844 N.E.2d 41, 2005 Ill. LEXIS 1759 (2005).

## ANALYSIS

The instant petition was filed on April 28, 2006, and is before the Court for an initial determination of its legal sufficiency pursuant to Section 2.1 of the Post-Conviction Hearing Act. 725 ILCS 5/122-2.1 (West 2002); *People v. Holliday*, 313 Ill. App. 3d 1046, 1048 (5th Dist. 2000). A post-conviction petition is a collateral attack on prior judgment, *People v. Simms*, 192 Ill. 2d 348, 359 (2000), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192 (2000). Where the petitioner raises non-meritorious claims, the court may summarily dismiss them. *People v. Richardson*, 189 Ill. 2d 401, 407 (2000).

Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). In order to obtain a hearing, the petitioner has the burden of establishing that a substantial violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000). However, a *pro* se post-conviction petition may be summarily dismissed as frivolous or patently without merit during the first stage of post-conviction review unless the allegations in the petition, taken as true and liberally construed, present the "gist" of a valid constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

## A.    Preclusion of Alibi Defense as Sanctions

Petitioner first argues his constitutional rights were violated when the trial court denied him the opportunity to call his mother to present an alibi defenses, precluded the attorney from making an offer of proof, and limited questioning of the defendant with regards to an alibi as a discovery sanction.

The Court had the inherent authority to strike the alibi witness as a sanction for the questionable tactics used by trial counsel. As stated above, petitioner's counsel on the first day of trial supplemented his discovery to include Mrs. Josephine Cisneros who would testify that petitioner returned home on the night in question before the shooting of Victor Silva. Counsel at no previous time had even hinted at putting on the affirmative defense of alibi. The State would have been severely prejudiced if it were forced to proceed against the alibi defendant without having an equal opportunity to prepare rebuttal witnesses.

The Illinois Supreme Court in *People ex rel. Carey v. Strayhorn*, 61 Ill. 2d 85 (1985) reiterated its stance earlier presented before the Illinois General Assembly, that:

4

These rules are broad enough to require the defense, upon the motion of the prosecution, to reveal (1) the fact that it intends to interject an alibi defense, and (2) the names and addresses of the witnesses they intended to call to establish that defense, and to require the prosecution, upon motion of the defense, to identify witnesses it intends to call to rebut the alibi defense-- together with any written or recorded statements made by any witness to the prosecution.

*Strayhorn*, 61 Ill. 2d at 91 *citing,* Annual Report to General Assembly, page 37 (1985).

It used the above as justification for arriving at its holding that the "rules providing for discovery in criminal cases are applicable to the defense of alibi, that Rules 412, 413, and 415(b) are broad enough to provide the disclosures required under *Wardius* and that section 114-9(c) of the Code of Criminal Procedure is invalid." *Id.*

Illinois enforces reciprocal discovery rights provisions on both the State and the defense with regards to alibi witnesses.  The Court did not error in striking petitioner's alibi witnesses as sanction for Petitioner's failure to comply with the discovery provisions of Section 114-9 of the Code of Criminal Procedure.

Indeed, Illinois Supreme Court Rule 415(g)(i) provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with the applicable discovery rule, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such order as it deems just under the circumstances.

*See* Ill. Sup. Ct. R. 415(g)(i).

In this case, the Court did not grant a continuance and chose to exclude the evidence in its entirety because it found that defense counsel's notice of an alibi defense at trial was a surprise tactic geared toward giving the defendant an unfair advantage.  Exclusion of alibi testimony has been recognized as an appropriate exercise of the trial court's discretionary authority under Rule 415(g).  *See People v. Morris*, 229 Ill. App. 3d 144, 164 (1st Dist.

5

1992).  Therefore, petitioner's constitutional challenge on these grounds is patently frivolous and without merit.

### 1.    The Opportunity Examine Dr. Donoghue

The next contention revolves around defense counsel's opportunity to examine Doctor Edmond Donoghue.  Doctor Donogue was selected to testify for the State in a limited capacity.  Doctor Donoghue testified that he reviewed the autopsy reports for the victim.  He stated that the victim's fatal gunshot wounds "revealed no evidence of close range firing."  Close range firing, he later described, would be a wound that was caused when the gun was probably under 18 inches away from the victim.

In this case, the testimony from Rudolfo Cruz was consistent because it established that petitioner was more than 18 inches away from the victim when he fired shots.

Petitioner's constitutional claims regarding his opportunity to examine Doctor Donoghue are belied by the record.  In fact, the Court provided petitioner's counsel an opportunity to meet with Doctor Donoghue and delayed trial for that purpose. Petitioner's claim is patently frivolous and without merit because he fails to allege the gist of a constitutional deprivation.

### B.    Ineffective Assistance of Trial Counsel

Petitioner's challenge that trial counsel was ineffective for failing to comply with discovery rules is another matter entirely and therefore is deserving of a separate analysis.

In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an

6

objective standard of reasonableness, and that but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224, 700 N.E.2d 1027, 1032 (1998) (citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

Challenges to trial counsel's representation ordinarily are not cognizable under the Act unless the claim regards a matter outside the trial record. *People v. Britz*, 174 Ill. 2d 163, 178-79 (1996); *People v. Coleman*, 267 Ill. App. 3d 895, 898-99 (1st Dist. 1994). In this case, the challenges to counsel's representations are matters outside the trial record and therefore are properly pleaded under the Act.

### 1.    Failure to Investigate

Whether defense counsel is ineffective for failing to investigate is determined by "the value of the evidence not presented at trial and the closeness of the evidence that was presented." *People v. Dillard*, 204 Ill. App. 3d 7, 10 (3rd Dist. 1990). Defense attorneys have an obligation upon defense attorneys to explore readily available sources of evidence that might benefit their clients. *Brown v. Sternes*, 304 F.3d 677, 679 (7th Cir. 2002), *citing Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997). Further, defense counsel has "a professional obligation, both legal and ethical, to investigate his client's alibi defense." *People v. Morris*, 335 Ill. App. 3d 70, 79 (1st Dist. 2002).

In this case, the Court will assume that trial counsel's performance was deficient for the sake of stage 1 analysis. The four affidavits petitioner attaches in support of his petition establish that petitioner, his mother, and his sister were available, were known to counsel, and would have testified to corroborate an alibi defense if called upon. The affidavit of Peter Hickey, an attorney appointed to assist Michael Fay on the eve of trial also substantiates that he would himself had filed an alibi defense and had assumed his partner, Michael Fay, filed the appropriate disclosures.

Nonetheless, in order to satisfy *Strickland*, the petitioner must also satisfy the prejudice prong. Here, petitioner's claim is woefully deficient. Both the Appellate Court

8

and the trial court concluded that "overwhelming evidence demonstrated that...
defendant fatally shot the victim as he stood at or near the bar door." *Mandate of the
Appellate Court*, 14.

In *People v. Jefferson*, 345 Ill. App. 3d 60 (1st Dist. 2003) the Appellate Court
reiterated established Supreme Court jurisprudence and found that a trial court may rely
on the record at the first stage of a postconviction proceeding to determine whether the
allegations made in a post-conviction petition are positively rebutted. No more is that the
case than in the present proceeding.

There as here, the contentions made by petition are thoroughly rebutted by the
record. Petitioner claims that his counsel was constitutionally ineffective for failing to
call his mother to testify in support of his alibi and failing to create a record of the trial
court's decisions on appeal. However, the bare contentions in the affidavits petitioner
attaches are thoroughly rebutted by the testimony of at least four witnesses who were
present at around 1:45 a.m. on the night of the murder. Cesar Sanchez, Rudolfo Cruz,
Maria Nunez, and Officers Oswald and Isadore provided substantial, extensive
eyewitness testimony and circumstantial evidence that confirmed petitioner's presence at
the Rendezvous Bar at 1:45 a.m., and his shooting of Ivan Nunez. The testimony of
petitioner's sister and mother could not have undermined in any constitutional degree the
great weight of the evidence obtained through the State's witnesses. The allegations
contained in those self-serving affidavits would have merely shown a mother and sister's
desire to protect their son and brother. However, that aside the record clearly establishes
that petitioner was present at the time. That was not a matter in dispute at trial and

9

probably was the reason petitioner's defense counsel, Michael Fay, did not list alibi as an affirmative defense in the first place.

Because petitioner fails to satisfy the prejudice prong of the *Strickland* analysis and the identical contentions made by his mother and sister are thoroughly rebutted by sworn trial testimony, his claim for ineffective assistance is patently frivolous and without merit.

## C.   Ineffective Assistance of Appellate Counsel

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise the aforementioned errors on appeal.

It is axiomatic that a criminal petitioner is guaranteed the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, effective assistance in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). In assessing claims of ineffective assistance of appellate counsel, the court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001).

To succeed on a claim of ineffective assistance of appellate counsel, petitioner must show that the failure to raise a particular issue was objectively unreasonable and that his appeal was prejudiced by the omission. *People v. Williams*, 209 Ill. 2d 227, 243 (2004). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her

judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Thus, petitioner has not suffered prejudice from appellate counsel's decision not to raise certain issues on appeal unless such issues were meritorious. *Id.* at 329.

Here, the Court declines to deem "patently erroneous" appellate counsel's assessment of the record and decision not to raise those issues now asserted by petitioner. Moreover, petitioner has failed to establish that had appellate counsel raised any or all of the above listed issues, his conviction or sentence would have been reversed. "A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim." *People v. Palmer*, 162 Ill. 2d 465, 475-76 (1994) (emphasis added) (citations omitted).

## CONCLUSION

Based upon the foregoing discussion, the Court further finds that the issues raised and presented by petitioner are patently frivolous and without merit. Accordingly, the petition for post-conviction relief is hereby dismissed. Petitioner's request for leave to proceed *in forma pauperis* and for appointment of counsel is likewise denied.

ENTERED: _____

Honorable Diane Gordon Cannon
Circuit Court of Cook County
Criminal Division

DATED: _____7-6-06_____

11

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-06-2380

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 29168 |
| | ) | |
| ALEJANDRO CISNEROS, | ) | Honorable |
| | ) | Diane G. Cannon, |
| Petitioner-Appellant. | ) | Judge Presiding. |

O R D E R

Petitioner Alejandro Cisneros appeals an order of the circuit court of Cook County

summarily dismissing his petition for post-conviction relief. Petitioner argues that he was entitled

to a different judge in the post-conviction proceedings and that his petition set forth the gist of

constitutional violations. This appeal is related to this court's prior decision in People v. Cisneros,

No. 1-04-0333 (1st Dist. 5th Div., April 15, 2005), which is attached as an appendix to appellant's

brief; this order will refer to the facts therein only insofar as necessary to address the issues raised

in this appeal.

Following a jury trial in the circuit count of Cook County, petitioner Cisneros was found guilty of first-degree murder and aggravated discharge of a firearm. Cisneros was later sentenced to 48 years in prison on the murder charge; no sentence was imposed on the firearms conviction.

Cisneros appealed to this court, arguing that: the State failed to prove him guilty of murder beyond a reasonable doubt; and that he received ineffective assistance of trial counsel because they failed to timely file a pretrial notice of alibi defense and failed to effectively cross-examine witnesses. This court, in an unpublished order entered pursuant to Supreme Court Rule 23, held that there was overwhelming evidence that Cisneros shot the victim, Ivan Nunez, as he stood at or near the door of the Rendezvous lounge on October 31, 2001. People v. Cisneros, No. 1-04-0333, slip op. at 14 (1st Dist. 5th Div., April 15, 2005). This court also rejected the claims of ineffective assistance of counsel. This court held that Cisneros failed to demonstrate that his trial counsel was ineffective for failing to present a timely alibi defense because he could not show a reasonable probability that the outcome of the trial would have differed, given the overwhelming evidence against him. People v. Cisneros, No. 1-04-0333, slip op. at 15-16 (1st Dist. 5th Div., April 15, 2005). This court also held that trial counsels' decisions regarding the cross-examination was a matter of trial strategy and did not support a claim of ineffective assistance. People v. Cisneros, No. 1-04-0333, slip op. at 16 (1st Dist. 5th Div., April 15, 2005). Cisneros then appealed to our supreme court, which denied leave to appeal on December 1, 2005.

Cisneros filed a petition for post-conviction relief on April 28, 2006. The petition alleges that Cisneros received ineffective assistance of trial counsel where: counsels failed to file an answer to discovery until the day of trial; failed to make a proffer of proof as to Cisneros's mother's alibi testimony; failed to make a proffer of proof when the trial court sustained the State's objection to Cisneros's alibi testimony. The petition alleges that Cisneros received ineffective

-2-

assistance of appellate counsel where: counsel failed to raise the denial of Cisneros's constitutional

rights to compulsory process, due process and a fair trial when the defendant was barred from

presenting alibi testimony at trial, including the refusal of the trial court to conduct sidebars for

offers of proof. The petition also alleged that Cisneros was denied a fair trial and due process

where the trial court sua sponte barred the alibi testimony from Cisneros and his mother and

refused to conduct sidebars for offers of proof.

Cisneros later filed a sworn motion for substitution of judge, citing Supreme Court Rule 63

and arguing that the trial judge should not sit to determine the propriety of her rulings on post-

conviction review. The matter was transferred to Judge Toomin, who heard and denied the

motion, sending the matter back to the trial judge.

On July 6, 2006, the trial court entered an 11-page order summarily dismissing the post-

conviction petition. The trial court ruled that the claim that the trial judge denied Cisneros's

constitutional rights was frivolous and patently without merit because barring the alibi testimony

was a well-established sanction under the court's inherent authority and Supreme Court Rule 415,

where the alibi defense was first proposed on the day of trial, after the State had presented its

witnesses. The trial court ruled that the claim of ineffective assistance of trial counsel was

frivolous, patently without merit and rebutted by the record where both the trial and appellate

court had found the evidence against Cisneros to be overwhelming. The trial court ruled that the

claim of ineffective assistance of appellate counsel was frivolous and patently without merit

because there was no showing that counsel's failure to raise the listed issues was patently

unreasonable and because Cisneros had failed to show a reasonable probability that his conviction

would have been reversed had they been raised. The transcript of proceedings shows that the trial

court also believed the claims raised were barred by the doctrine of <u>res judicata</u>. Cisneros now appeals.

I

Cisneros first contends that he was entitled to a substitution of judge in the post-conviction proceedings. It is well settled that "[t]here is no absolute right to a substitution of judge at a post-conviction proceeding." <u>People v. Madej</u>, 177 Ill. 2d 116, 163 (1997), quoting <u>People v. Hall</u>, 157 Ill. 2d 324, 331 (1993), citing <u>People v. House</u>, 202 Ill. App. 3d 893, 910 (1990), citing <u>People v. Wilson</u>, 37 Ill. 2d 617 (1967). "Rather, the same judge who presided over the defendant's trial should hear his post-conviction petition, unless it is shown that the defendant would be substantially prejudiced." <u>Madej</u>, 177 Ill. 2d at 164, quoting <u>Hall</u>, 157 Ill. 2d at 331 (citing <u>People v. Mamolella</u>, 42 Ill. 2d 69, 73 (1969), <u>People v. Neal</u>, 123 Ill. App. 3d 148, 152 (1984), and <u>People v. Day</u>, 152 Ill. App. 3d 416, 421 (1987).

In this case, the bias alleged by Cisneros is that the original trial judge, because she made the rulings at trial, would not have been as impartial as a new judge. This very argument was rejected by this court in <u>House</u>, 202 Ill. App. 3d at 909-910

The cases cited by Cisneros are distinguishable. In <u>People v. Vasquez</u>, 307 Ill. App. 3d 670, 673-74 (1999), it appeared that the judge in question actively participated as an assistant State's Attorney in the original prosecution of defendant. In <u>People v. Brim</u>, 241 Ill. App. 3d 245, 249 (1993), the trial judge allegedly informed defendant's attorney if defendant did not plead guilty defendant would be sentenced to at least 20 years. In <u>People v. Reynolds</u>, 284 Ill. App. 3d 611, 617 (1996), involved a similar conversation by a trial judge who also refused to submit to discovery regarding the allegations.

Cisneros suggests that the trial judge acted outside her role and took on the role of prosecutor by making sua sponte objections and rulings. A court has the power to ensure that proceedings before it are orderly. People v. Griffin, 194 Ill. App .3d 286, 294 (1990). It has the responsibility to achieve prompt and convenient dispatch of court business. People v. Williams, 201 Ill. App .3d 207, 221 (1990); see People v. Shum, 117 Ill. 2d 317, 345 (1987). A court is permitted to make rulings without objections from counsel. People v. Jackson, 250 Ill. App. 3d 192, 204 (1993). Moreover, in order for a trial judge's comments or actions to merit reversal, there must be prejudice. People v. Smulligan, 204 Ill. App. 3d 110, 115 (1990). The defendant must establish that the comments were a material factor in his or her conviction. People v. Thompson, 234 Ill. App. 3d 770, 773 (1991).

In this case, the trial judge excluded some (but not all) alibi testimony from petitioner and barred petitioner's mother from giving alibi testimony, where counsel raised them after the State had rested its case, noting that such testimony was known to the defense well before that juncture of the trial. In petitioner's direct appeal, this court has already considered and rejected the argument that trial counsel was ineffective for failing to timely raise the alibi defense, based on the overwhelming evidence presented against defendant at trial. Accordingly, petitioner could not prove prejudice resulting from those rulings, sua sponte or otherwise.

Cisneros likens the issue to a counsel on appeal being unwilling to argue his or her own ineffectiveness, but that argument would prove too much. The judicial system is rife with situations in which a trial judge reviews his or her own rulings, including post-trial motions in criminal cases, motions in limine, and motions to reconsider generally. Accordingly, Cisneros was not entitled to a substitution of judge merely because the trial judge would be reviewing her own rulings.

II

Cisneros next argues that the trial court erred in summarily dismissing his petition for post-conviction relief. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2004)) provides a defendant with a collateral means to challenge his or her conviction or sentence for violations of federal or state constitutional rights. People v. Jones, 211 Ill.2d 140, 143 (2004). Once the defendant files a petition under the Act, the trial court must first, independently and without considering any argument by the State, decide whether the defendant's petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2004). Generally, to survive dismissal at this initial stage, the post-conviction petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only a limited amount of detail. People v. Gaultney, 174 Ill.2d 410, 418 (1996). This court reviews de novo the trial court's dismissal of a post-conviction petition without an evidentiary hearing. People v. Simms, 192 Ill.2d 348, 360 (2000). This court may affirm the trial court on any basis supported by the record even if the trial court reasoned incorrectly. People v. Lee, 344 Ill. App. 3d 851, 853 (2003).

Our supreme court has held that the determination of whether a claim is "frivolous or ***patently without merit" encompasses ruling on issues such as res judicata and forfeiture, noting that it decisions regarding the meaning of the "gist" standard had arisen only outside the context of res judicata and forfeiture. People v. Blair, 215 Ill. 2d 427, 445-46 (2005).

A review of the record in this case shows that the claims regarding the original rulings of the trial judge and the claimed ineffective assistance of counsel could have been raised in the original appeal. Indeed, the issue of whether trial counsel was ineffective for failing to present a timely alibi defense was raised and rejected by this court in the original appeal. Moreover, the

-6-

trial court rulings Cisneros attempts to raise now resulted from of trial counsel's failure to attempt to raise the alibi defense until after the State had presented its case.

In Blair, our supreme court reaffirmed that exceptions to the doctrines of res judicata and forfeiture may allow otherwise barred claims to proceed, e.g., where fundamental fairness so requires; where the alleged forfeiture stems from the incompetence of appellate counsel; or where facts relating to the claim do not appear on the face of the original appellate record. Blair, 215 Ill. 2d at 450-51. However, our supreme court has given no indication that the exceptions are intended to swallow the rule. A petitioner cannot obtain relief under the Act by rephrasing in constitutional terms issues which were previously addressed, such as ineffective assistance of trial or appellate counsel. People v. Easley, 192 Ill. 2d 307, 329 (2000).

In this case, the alleged ineffective assistance of appellate counsel is that said counsel failed to raise claims that Cisneros was denied various constitutional rights where the trial court barred him from raising an alibi defense after the State rested its case in chief. However, as noted above, this court has already considered and rejected the argument that trial counsel was ineffective for failing to timely raise the alibi defense, based on the overwhelming evidence presented against defendant at trial. That Cisneros could not show a reasonable probability that the outcome of his trial would have been different with the alibi defense remains true, regardless of whether it is phrased as a denial of rights by the trial court, ineffective assistance of trial counsel or ineffective assistance of appellate counsel. Accordingly, Cisneros cannot show that the trial court erred in dismissing his post-conviction petition as frivolous and patently without merit.

For all of the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL, J., with NEVILLE, P.J., and O'BRIEN, J., concurring.

-7-

106149

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

May 29, 2008


Mr. Samuel E. Adam
Attorney at Law
6133 South Ellis Avenue
Chicago, IL 60637

No. 106149 - People State of Illinois, respondent, v. Alejandro
              Cisneros, petitioner.  Leave to appeal, Appellate
              Court, First District.


The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.


The mandate of this Court will issue to the Appellate Court on July 3, 2008.