**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ALEJANDRO CISNEROS, ) ) ) Petitioner, ) ) v. ) ) TERRY McCANN, Warden, ) ) Respondent. ) | No. 08-CV-4650 Hon. Joan H. Lefkow |

## OPINION AND ORDER

Alejandro Cisneros ("Cisneros"), who is currently incarcerated at Stateville Correctional Center in Joliet, Illinois, has filed a petition for writ of habeas corpus based on alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights. Cisneros raises two issues: 1) whether he was denied effective assistance of counsel; and 2) whether the trial court improperly denied him the right to compulsory process and the opportunity to testify on his own behalf in violation of his Due Process rights. For the reasons stated below, Cisneros's petition for a writ of habeas corpus [#1] is denied.

## BACKGROUND

The following is a brief summary of the facts taken primarily from the Illinois Appellate Court's opinion affirming the trial court's judgment. *See People* v. *Cisneros*, No. 1-04-0333, at 1-7 (Ill. App. Ct. Apr. 15, 2005) (unpublished opinion). On the night of October 31, 2001, Ivan Nunez and his wife Maria were at the Rendezvous Bar in Chicago. As they prepared to leave, Ivan was shot and later died at a hospital.

At trial in the Circuit Court of Cook County, two witnesses testified that Cisneros was present at the Rendezvous Bar at the time of the shooting. Cesar Sanchez, a disk jockey at the

bar, testified that as he was leaving the bar that night, Cisneros was standing outside and inquired as to whether the victim were inside. Shortly after, Sanchez crossed the street and then heard the sound of gunshots. When Sanchez looked back, he saw Cisneros jump through the passenger window of a truck being driven by another individual and watched the truck drive away with Cisneros's legs hanging out the window. Rudolfo Cruz, a security guard at the bar, testified that he heard gunshots outside, at which point Nunez came into the bar. Cruz then saw Cisneros open the door and fire three shots at Nunez. Cruz also testified about a previous incident at the Rendezvous concerning Cisneros and Nunez. According to Cruz, Cisneros appeared at the Rendezvous bar "once or twice a month." *Id.* at 4. Two months before the shooting, Cruz asked Cisneros to leave because he was bothering Nunez's wife. This led to a fist fight between Cisneros and Cruz and resulted in Cisneros being banned from the bar for a few weeks.

Waitresses Lilliana Peña and Lourdis Gonzalez, were also present. Pena testified that she heard gunshots fired outside the bar and saw the victim enter the bar afterward. Similarly, Gonzalez testified that she heard one or two gunshots before the victim entered the bar saying, "I got hit." *Id*. at 5. Gonzalez also testified that she only heard gunshots fired outside the bar and did not see who fired the shots because the individual stayed outside. An officer at the scene, however, found one cartridge case in the bar's doorway and one on the sidewalk outside. Additionally, the officer found a fired bullet along the bar counter, which ran along the back wall opposite the doorway.

After the state's evidence had been presented, Cisneros's counsel told the court, for the first time, that they wished to establish an alibi defense with the testimony of Cisneros's mother,

Josephine Cisneros. Although the prosecution did not object, the trial judge *sua sponte* barred Cisneros's mother from testifying to his alibi defense on the ground that the request was untimely. The trial judge stated that she would not permit a "trial by ambush," *id*. at 6, and as a sanction, the trial judge further denied Cisneros the opportunity to make an offer of proof.

Cisneros called Jose Morales to testify that he and Cisneros were at the Rendezvous Bar on the night of the shooting but Cisneros dropped him back at his house at about 1:15 a.m., approximately 45 minutes before the shooting. Morales did not know where the defendant was after that time. Additionally, Cisneros testified on his own behalf that he neither had a gun nor shot anyone on the night Ivan Nunez was shot and that he was home at the time of the shooting. The trial judge struck Cisneros' testimony that he was home at the time of the shooting, however, because it related to the alibi defense which it had already barred. A jury convicted Cisnerosof one count of first degree murder and one count of aggravated discharge of a firearm. He was sentenced to 48 years in prison for the murder conviction.

On direct appeal, Cisneros raised two issues: 1) whether there was sufficient evidence at trial to prove him guilty beyond a reasonable doubt; and 2) whether he received ineffective assistance of counsel because his attorneys failed to file a timely notice of his alibi defense and alibi witnesses and inadequately cross-examined state's witnesses. The Illinois Appellate Court affirmed the trial court's judgment. The court found that the "[o]verwhelming evidence demonstrated that a rational trier of fact could find that defendant fatally shot the victim." *Id.* at 14. Additionally, with regard to his claim of ineffective assistance of counsel, the court found that Cisneros "failed to demonstrate how his mother's testimony . . . would have changed the outcome of his case." *Id.* at 15. Furthermore, the appellate court found that Cisneros's counsel

"thoroughly cross-examined the State's witnesses" and that "[t]rial counsels' decision on how to cross-examine the State's witnesses or whether to pursue a certain line of questioning was a matter of trial strategy." *Id.* at 16. The Illinois Supreme Court subsequently denied leave to appeal. *People* v. *Cisneros*, 844 N.E.2d 41, 41, 217 Ill. 2d 573, 300 Ill. Dec. 369 (2005).

Cisneros sought post-conviction relief in the Circuit Court of Cook County, raising four issues: 1) whether the trial court improperly denied Cisneros's rights to compulsory process and due process by barring him from calling an alibi witness; 2) whether Cisneros received ineffective assistance of counsel where his attorneys failed to timely file notice of an alibi; 3) whether the trial court improperly denied Cisneros the right to testify on his own behalf as to his whereabouts at the time of the murder; and 4) whether Cisneros received ineffective assistance of appellate counsel because they did not raise the issue of the trial court's refusal to allow Cisneros to testify on his own behalf. The Circuit Court of Cook County dismissed Cisneros's petition for post-conviction relief, ruling that his claims were patently frivolous and without merit.

On appeal of the post-conviction relief ruling, Cisneros also argued in his post-conviction proceedings that he was entitled to a judge different from the trial judge. The Illinois Appellate Court affirmed the trial court's decision, ruling that it was appropriate for the trial judge to preside over post-conviction proceedings. It further ruled that Ciseneros's request for post-conviction relief was foreclosed based on res judicata and forfeiture, *People* v. *Cisneros*, No. 01-06-2380, at 5, 6-7 (Ill. App. Ct. Dec. 6, 2007), both of which are encompassed within a determination that a claim is frivolous or patently without merit. *See People* v. *Blair*, 831

4

N.E.2d 604, 615-16, 215 Ill. 2d 427, 294 Ill. Dec. 654 (2005). The Supreme Court denied Cisneros' petition for leave to appeal this decision.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the court may not grant a petition for writ of habeas corpus unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams* v. *Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. As long as the state court "applied the correct constitutional standard . . . [the court] must affirm unless convinced that the determination was unreasonable." *Stanley* v. *Bartley*, 465 F.3d 810, 813 (7th Cir. 2006) (citing *Brown* v. *Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005)).

Federal habeas review is not available in "cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . unless the prisoner can demonstrate cause for the default and actual prejudice . . . or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris* v. *Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (citations omitted) (internal quotation marks omitted); *Pole* v. *Randolph*, 570 F.3d 922, 937 (7th Cir. 2009).

## ANALYSIS

### I. Ineffective Assistance of Counsel

Cisneros argues that he was deprived of effective assistance of counsel because his attorneys failed to timely file notice of his alibi defense, resulting in the trial judge barring the testimony of his mother, who would have testified that Cisneros was home at the time of the shooting. Specifically, Cisneros claims that his petition should be granted because the state courts unreasonably applied federal law when ruling on his claim of ineffective assistance of counsel. Reversal of a conviction on the basis of ineffective assistance of counsel is only appropriate if the defendant can show that 1) "counsel's performance was deficient," and 2) "the deficient performance prejudiced the defense." *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The standard for measuring counsel's performance "is that of reasonably effective assistance," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687, 689. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Cisneros first argues that because the Illinois Appellate Court did not rule on the first prong of *Strickland*—whether counsel's performance was deficient—he is entitled to *de novo* review by this court. In support, Cisneros cites the Seventh Circuit's opinion in *Toliver* v. *McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008). Like the instant case, the state appellate court in *Toliver* concluded that the plaintiff did not establish the prejudice prong of *Strickland* and therefore did not address whether counsel's performance was deficient. *Id.* at 775. The Seventh Circuit conducted a *de novo* review of this issue only because it also determined that the state appellate court had unreasonably applied the prejudice prong. *Id.* at 776. Thus, before this court need review the performance prong of *Strickland*, the court must address whether the Illinois Appellate Court unreasonably applied the prejudice prong.

In his reply brief, Cisneros argues that the appellate court unreasonably applied the prejudice prong by using an "outcome-determination test" contrary to United States Supreme Court decisions, which only require a "reasonable probability" of a different result. Pet'r's Reply Br. at 16. On direct appeal, the Illinois Appellate Court recited the prejudice prong of *Strickland* as "but for counsel's deficient performance, the result of the proceeding would have been different." *Cisneros*, No. 1-04-0333, at 15 (citing *Strickland*, 466 U.S. at 694). The appellate court then found that "[d]efendant has failed to demonstrate how his mother's testimony that he was at home with her at the time of murder would have changed the outcome of his case." *Id.*

Respondent recognizes that the appellate court failed to use the words "reasonable probability" but argues that the court was only using "shorthand for the correct standard." Resp't's Answer to Pet., at 18. As support, respondent points to the appellate court's subsequent opinion regarding Cisneros' petition for post-conviction relief in which the court referenced its previous holding by stating that "Cisneros could not show a *reasonable probability* that the outcome of his trial would have been different." *Cisneros*, No. 1-06-2380, at 7 (emphasis added). Both opinions were drafted under the same panel of judges. Respondent also cites to the Seventh Circuit's opinion in *Johnson* v. *Loftus* to argue that the appellate court's failure to use the words "reasonable probability" may be excused so long as there is evidence that the court actually applied this standard. 518 F.3d 453 (7th Cir. 2008). In *Johnson*, the appellate court recited the second prong of *Strickland* but omitted the words "reasonable probability." *Id.* at 456. On the next page of the opinion, however, the appellate court correctly stated that the defendant "had not shown a 'reasonable possibility' that the outcome would have been different." *Id.* at 457. The Seventh Circuit ruled that the appellate court properly applied the second prong of *Strickland* under these circumstances. *Id.*

The same result is appropriate in the instant case. Although the Illinois Appellate Court failed to use the term "reasonable probability" in its opinion regarding Cisneros's direct appeal, the appellate court's subsequent opinion recognizing that Cisneros did not show a "reasonable probability" of a different outcome indicates that the court understood and applied the proper standard on direct appeal. Furthermore, the appellate court's finding on direct appeal—that Cisneros did not show how his alibi defense would have changed the outcome—does not foreclose this conclusion. For the appellate court to find a reasonable probability that the alibi

8

defense would lead to a different result, Cisneros would need to establish some connection between the alibi defense and the outcome. But if Cisneros failed to show, at a minimum, *how* the alibi defense would have changed the outcome, then *a fortiori* he did not show a reasonable probability of a different outcome. This is not an "outcome-determination test," as Cisneros argues; rather, the appellate court recognized that Cisneros had to demonstrate that the alibi defense could have an effect on the outcome before the court would find a "reasonable probability" of a different result.[1]

The Illinois Appellate Court considered Cisneros' ineffective assistance of counsel claim on direct appeal, but recounted the "overwhelming" evidence against Cisneros at trial, including two eyewitnesses who placed Cisneros at the Rendezvous Bar at the time of the shooting, one of whom witnessed Cisneros shoot the victim. *Cisneros*, No. 1-04-0333, at 15. Thus, the appellate court found that Cisneros did not show "how his mother's testimony . . . would have changed the outcome of his case." *Id.* In its opinion regarding Cisneros's petition for post-conviction relief, the appellate court reaffirmed this conclusion. *Cisneros*, No. 1-06-2380, at 7. Because the appellate court's decision was not "contrary to" and did not involve "an unreasonable application of, clearly established Federal law," Cisneros's petition must be denied. *See* 28 U.S.C. § 2254(d).

---

[1] Cisneros unpersuasively argues that an identical issue arose in *Stanley* v. *Bartley*, 465 F.3d 810 (7th Cir. 2006). In *Stanley*, the appellate court stated the correct standard but concluded that the petitioner "was not so prejudiced by any of the alleged mistakes that the outcome of the trial would have been any different." *Id.* at 813. The Seventh Circuit recognized that the burden of showing a different outcome is higher than showing a reasonable probability of a different outcome. *Id.* Judge Posner remarked, however, that "it is more likely that the court stated its conclusion imprecisely than that it applied a different standard." *Id.* (citing *Woodford* v. *Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam)).

## II. Rights to Compulsory Process and to Testify on One's Own Behalf

Cisneros argues that his rights to compulsory process and to testify on his own behalf were denied when the trial court judge barred his mother from testifying at trial and struck his testimony that he was home at the time of the shooting. Respondent argues that these claims were procedurally defaulted based on the independent and adequate state law ground of forfeiture.

As the Illinois Appellate Court noted in its opinion, the Illinois Supreme Court has held that "trial courts may summarily dismiss postconviction petitions based on both *res judicata* and waiver." *Blair*, 831 N.E.2d at 614; *see Cisneros*, No. 1-06-2380, at 6.[2] Thus, the appellate court barred Cisneros' compulsory process and right-to-testify claims because "the claims regarding the original rulings of the trial judge . . . could have been raised in the original appeal" but were not. *Cisneros*, No. 1-06-2380, at 6. As the Seventh Circuit has stated, "[a] habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Bintz* v. *Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). Because Cisneros did not raise these claims on direct appeal, the claims were procedurally defaulted and not subject to federal habeas review.

Cisneros has shown neither cause for the default nor the likelihood that a fundamental miscarriage of justice will result from the default. *See Coleman*, 501 U.S. at 750. To show

---

[2] The Seventh Circuit has held that "[f]ederal review is precluded only by procedural forfeitures, not by *res judicata* concerns." *Page* v. *Frank*, 343 F.3d 901, 907 (7th Cir. 2003). Therefore, the court will only consider Cisneros's compulsory process and right-to-testify claims as subject to procedural default because the Illinois Appellate Court ruled that these claims were forfeited. *See Cisneros*, No. 1-06-2380, at 6.

cause, Cisneros argues that his appellate counsel's failure to raise his compulsory process and right-to-testify claims on appeal rendered their assistance ineffective. This argument is unavailing. Appellate counsel need not raise every potential issue on appeal to provide effective assistance of counsel. *See Jones* v. *Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). And, as the Supreme Court stated in *Strickland*, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. That appellate counsel did not raise the issues of compulsory process and right-to-testify certainly does not suggest their performance was deficient. Rather, it was reasonable for appellate counsel to conclude that the compulsory process and right-to-testify claims were not strong arguments on appeal: Cisneros's statement that he was at home at the time of the shooting and his mother's testimony as support were biased and not likely to be given much consideration, especially considering the evidence placing Cisneros at the scene of the shooting. Therefore, Cisneros does not show that his appellate counsel was deficient and, accordingly, does not establish cause for the default. There is also no evidence that procedural default will result in a fundamental miscarriage of justice.

Cisneros also cites three United States Supreme Court decisions—*Rock* v. *Arkansas*, *Chambers* v. *Mississippi*, and *Washington* v. *Texas*—to argue that the state courts' decisions regarding his compulsory process and right-to-testify claims were "contrary to" holdings of the Supreme Court. This argument is not applicable here because the compulsory process and right to testify claims were procedurally defaulted. Nevertheless, none of these cases either addressed

11

an issue of law applicable to the instant case or involved facts materially similar to the instant case. *See Rock* v. *Arkansas*, 483 U.S. 44, 62, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (ruling that "Arkansas' *per se* rule excluding all posthypnosis testimony infringes impermissibly on the right of a defendant to testify on his own behalf"); *Chambers* v. *Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (ruling that defendant was denied a fair trial when he was prohibited from cross-examining his own witness under the state's "voucher rule" and from introducing the testimony of three individuals who heard another's confession because of the hearsay rule); *Washington* v. *Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (ruling that defendant was denied right to compulsory process when state statute prohibited him from calling testimony of an individual "charged or convicted as [a] coparticipant[] in the same crime"). In contrast to the cases cited by Cisneros, the opportunity to present an alibi defense was initially available; the trial judge only barred the defense when it was raised mid-trial because she saw it as an attempt to blindside the prosecution after it had presented its witnesses. Accordingly, the cases cited by Cisneros do not necessitate federal habeas review.

## CONCLUSION

For the foregoing reasons, Cisneros' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.


Dated: May 11, 2010                Enter: _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge